**ESKIMO PIE CORPORATION v. LEVOUS et al.**

District Court, D. New Jersey. February 8, 1928.

**1. Patents ⊗328—1,404,539, for Eskimo pie, held invalid for want of novelty and invention.**

Nelson patent, No. 1,404,539, for Eskimo pie, held invalid for lack of novelty and invention, in view of the prior art.

**2. Patents ⊗20—Form alone cannot be invention.**

There is no invention in form alone.

**3. Patents ⊗36(2)—Commercial success is not conclusive of invention.**

The commercial success of a product is not conclusive evidence that it embodies invention.

**4. Patents ⊗210—Single purchase of wrappers without knowledge of printed patent notice does not make purchaser licensee by estoppel.**

A single purchase of candy wrappers, without knowledge that they bore any patent notice, does not constitute the purchaser a licensee by estoppel.

**5. Trade-marks and trade-names and unfair competition ⊗59(5)—Seller of "Big-5 Pie" held not to have infringed trade-mark "Eskimo Pie," or "Pie."**

Defendant, selling "Big-5 Pie" to purchasers asking for "Eskimo Pie" held not to have infringed plaintiff's trade-mark "Eskimo Pie," or "Pie," if the latter is subject to appropriation.

In Equity. Suit by the Eskimo Pie Corporation against John Levous and the Purity Ice Cream Company. Decree for defendants.

Everett & Rook, of New York City, and Henry B. Floyd, of Washington, D. C., for plaintiff.

John C. Kerr, Warren B. Hutchinson, and Ramsay Hoguit, all of New York City, for defendants.

BODINE, District Judge. This is an action for the infringement of United States letters patent No. 1,404,539, to Nelson, and also the registered trade-marks "Eskimo Pie," No. 155,844, and "Pie," No. 162,585.

[1] The Nelson patent was applied for December 23, 1921, and is for a confection consisting of a block of ice cream coated with chocolate. The claims in suit are the first six.

The gist of the invention, if there be one, is in sealing a block of ice cream in a sustaining and self-retaining casing of chocolate. A rectangular piece of ice cream is coated with chocolate. The plaintiff has 1,960 licensees, and in 1926 through these licensees 181,000,000 "Pies" were sold. For the 10 months, inclusive of October, 1927, 210,000,000 "Pies" have been produced. The sole issue is validity.

It is obvious that chocolate-coated confections are old. In 1907, Val Miller published his booklet, entitled "Thirty-Six Years an Ice Cream Maker." In this booklet he describes the manufacture of "Ice Cream Cannon Balls" as follows:

"Mould some round balls extra hard as for individuals, then melt some sweet chocolate, thin it down with cocoa butter, let it cool until the most of the heat is off; now have two wire forks, drop a frozen ice cream ball into the chocolate, turn it upside down quick, and with your two forks set it out on

your tray, and then immediately in your ice cabinet or iced-up can."

All that the patentee does is to take a small brick of ice cream and coat it with chocolate, just as candies are coated. Val Miller took a round ball of ice cream and coated it, just as candies are coated. In one case the ice cream is round in form, and in the other case it is rectangular. In both cases there is a sustaining and self-retaining casing, sealing the core of ice cream.

The Cannon Ball ice cream was, a few years ago, popularized as the Babe Ruth Baseballs, and sold quite as well as Eskimo Pie. The Babe Ruth Baseballs are said to have been eaten by hand, just as the Pie is eaten.

The Tobien German patent, No. 247,709, of 1913, is a complete anticipation. The liquid filling is first frozen and then chocolate-coated. Tobien's claim is as follows:

"A process for producing small, hollow bodies made of chocolate, cocoa, sugar, gelatine, albumen, or similar materials with fluid or pulpy contents, by first placing the liquid or pulpy contents in a container and freezing same, and after same is frozen into a solid body to coat this body in the usual way with chocolate, cocoa, sugar, gelatine, albumen, or similar materials, which are designed to remain as a covering for the contents, which may again assume their liquid form."

In view of the disclosure, there was nothing novel in coating a bar of ice cream with chocolate. Even the sustaining and self-retaining casing of chocolate covering a liquid was not novel. Tobien shows that the chocolate he used was designed as a covering for the contents when liquid. He does not limit his disclosure to candy or brandy filling.

[2] Nelson did cover his "Pie" with tin foil, but he does not claim any invention in this. And he certainly could not, in view of the fact that yeast, confections, and other edibles have been so covered for years. There was neither a new creation of elements by Nelson, nor a new resultant. Val Miller and Tobien had the same elements and the same resultant. There is no invention in form alone. Roberts on Patents, 169.

[3] Commercial success is not conclusive upon the question of invention. It merely shows here that the alleged patentee anticipated a desire for ice cream.

[4] The defendant does not appear to have been a licensee, although he did purchase wrappers from the Lehmaier-Schwartz Company. The single purchase of wrappers, without knowledge that they bore any patent notice, would hardly be sufficient to con-stitute the purchaser a licensee by estoppel.

[5] As to the charge of unfair competition, the 2,000 Eskimo Pie wrappers, which the defendant Levous purchased, were used for a single customer, and these were purchased from a concern authorized by the complainant to sell wrappers. The defendant did have in his place of business in Newark a few wrappers around dummies, and when asked for Eskimo Pie said he did not have Eskimo Pie, but did sell a Big-5 Pie, telling the purchaser it was a Big-5 Pie. Certainly, "Big-5 Pie" does not infringe any trademark, such as "Eskimo Pie," or "Pie," if the word "Pie" is subject to pre-emption.

The bill will be dismissed, with costs.